UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BCCTC ASSOCIATES VI, INC., as general partner of BCCTC ASSOCIATES VI LIMITED PARTNERSHIP as general partner of BOSTON CAPITAL CORPORATE TAX CREDIT FUND VI, A LIMITED PARTNERSHIP, BOSTON CAPITAL CORPORATE TAX CREDIT FUND VI, A LIMITED PARTNERSHIP, BCCC, INC., individually and on behalf of CHESTERFIELD GLEN, L.L.C., and CHESTERFIELD GLEN, L.L.C., Plaintiffs, v. ASPEN CHESTERFIELD CORP., CRAIG A. LONGSTRETH, and DOUGLAS R. McCLOUD, Defendants. | Civil Action No. 04-11030-RCL |

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE,
TO TRANSFER THE PROCEEDINGS

David E. Lurie, BBO# 542030
Sara A. Laroche, BBO# 652479
LURIE & KRUPP, LLP
One McKinley Square
Boston, MA 02109
(617) 367-1970

ATTORNEYS FOR DEFENDANTS

Dated: June 30, 2004

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………...……….... 1

FACTS……………………………………………………………………….…………... 2

    Defendants do not Reside or do Business in Massachusetts ………………………………2

    Plaintiff Chesterfield Glen, Aspen's Co-Developer Oakwood Development, the
    Management Agent for the Project, and the Project Itself are all in Michigan…………… 2

    Boston Capital Solicited Defendants to Become an Investor in the Project………………4

    The Transaction Closed in Michigan, all Parties Signed the Operating Agreement and
    Guaranty in Michigan, and the Operating Agreement and Guaranty Provide for
    Application of Michigan Law……………………………………………………………...5

    Boston Capital Executed a Guaranty in which It Consented to Jurisdiction and Venue in
    Michigan………………………………...…….……………………………………...…… 6

    The Alleged Breach of Fiduciary Duty by Defendants in Michigan…………………………7

ARGUMENT ……………………………………………………...……………………… 8

I.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT
     LACKS PERSONAL JURISDICTION OVER THE
     NON-RESIDENT DEFENDANTS ……………………………………………… 8

    A. Legal Standard …………………………………………………………… 8

    B. Plaintiffs Cannot Satisfy The Requirements To Establish Personal Jurisdiction
       Over Defendants Under The Massachusetts Long Arm Statute ……………………… 8

      1.  Defendants did not transact business in Massachusetts….. ………………..……. 9

      2.  Defendants did not cause tortious injury by act or omission in
         Massachusetts ……..…………………………………………………..………12

      3.  Defendants did not cause tortious injury in the Commonwealth and did not
         regularly solicit business, engage in persistent conduct or derive substantial
         revenue from goods sold or services rendered in the Commonwealth…………12

    C. Plaintiffs Cannot Establish That The Exercise Of Personal Jurisdiction Is Consistent
       With Constitutional Due Process ………………………………………………..... 13

II. IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION
    FROM MASSACHUSETTS TO THE EASTERN DISTRICT OF MICHIGAN
    PURSUANT TO 28 U.S.C. §1404(a)………………………………………………..... 17

CONCLUSION …………………………………………………………………….…..... 20

## INTRODUCTION

Defendants Aspen Chesterfield Corporation ("Aspen"), Craig A. Longstreth ("Longstreth"), and Douglas R. McCloud ("McCloud") (together "Defendants") move to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs Boston Capital Corporate Tax Credit Fund VI and BCCC, Inc. (together, "Boston Capital") are investors in Plaintiff Chesterfield Glen, L.L.C., a Michigan company formed to construct and operate a low- and moderate-income rental apartment complex in Chesterfield, Michigan (the "Project"). Plaintiffs allege that Defendant Aspen, a co-developer of the Project, and Defendants McCloud and Longstreth, principals of Aspen, breached their fiduciary duties by paying themselves certain fees that were allegedly improper.

None of the Defendants reside in Massachusetts. Defendants have not conducted any business in Massachusetts, have not solicited any business in Massachusetts, and derive no revenue from sale of goods or services in Massachusetts. The alleged breach by Defendants occurred outside of Massachusetts. Plaintiffs allege neither acts of wrongdoing within the Commonwealth nor any injury sustained within Massachusetts.

The only connection this action has to Massachusetts is that the investor Plaintiffs happen to be based in Massachusetts. The Project itself is in Michigan; the Plaintiff operating company is a Michigan entity located in Michigan; the relevant agreements provide for application of Michigan law; the documents concerning the fees at issue are located in Michigan; the alleged breach took place in Michigan; and pertinent witnesses are located in Michigan.

Given these facts, this Court cannot exercise personal jurisdiction over Defendants because there are insufficient contacts with Massachusetts to satisfy the requirements of the Massachusetts Long Arm Statute, G.L. c. 223A, § 3 and constitutional due process. The Court

1

therefore should dismiss the claims against all Defendants pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, the Court should transfer the action to the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1404(a), as Michigan is the most convenient forum for this litigation.

In support of their Motion, Defendants submit herewith the Affidavits of Douglas R. McCloud ("McCloud Aff.") and Craig A. Longstreth ("Longstreth Aff."), along with a volume of exhibits referenced by the Affidavits.

## FACTS

### Defendants Do Not Reside or Do Business in Massachusetts

Defendants McCloud and Longstreth are principals of Defendant Aspen. McCloud Aff. ¶ 2; Longstreth Aff. ¶ 2. McCloud and Longstreth live and work in Ohio. Id. Aspen is an Ohio corporation and its principal place of businesses is in Ohio. McCloud Aff. ¶ 2. Aspen is authorized to do business in Michigan. Id.; Longstreth Aff. ¶ 2; Exhibit E. Neither McCloud, Longstreth, nor Aspen has conducted business in Massachusetts. McCloud Aff. ¶ 3; Longstreth Aff. ¶ 3.

### Plaintiff Chesterfield Glen, Aspen's Co-Developer Oakwood Development, the Management Agent for the Project, and the Project Itself are all in Michigan

Beginning in or about 1995, Oakwood Development, L.C. ("Oakwood") began pursuing a low- and moderate-income housing development in Chesterfield, Michigan just outside of Detroit (the "Project"). McCloud Aff. ¶ 4. Oakwood is a limited liability company organized under the laws of Michigan and has a principal place of business in Michigan. Id.; Complaint ¶ 11. Thomas J. Kostosky ("Kostosky") and Craig A. Moulton ("Moulton") are principals of Oakwood. McCloud Aff. ¶ 4. On information and belief, both Kostosky and Moulton reside and work in Michigan. Id. In 1995, Oakwood formed Chesterfield Glen, L.L.C. ("Chesterfield

2

Glen" or the "Company") to develop the Project. Id. The original operating agreement for the Company was executed on May 1, 1995. See First Amended and Restated Operating Agreement, Preliminary Statement, p.1 ("Operating Agreement"), attached hereto as Exhibit A.

Later in 1995, Oakwood began working with Aspen Capital Corp., an affiliate of Aspen, on the Project. McCloud Aff. ¶ 5. In or about February 1996, the Operating Agreement was amended and Aspen Capital Corp. was admitted to the Company. See Exhibit A. The sole purpose of the Company is to develop and maintain the Project in Chesterfield, Michigan. Id. § 2.3. The Operating Agreement specifies that "the Company shall not ... engage in any business or activity outside the state [of Michigan]." Id. § 2.2(d). Aspen Capital Corp. and Oakwood were the two Managing Members of the Company; in November 1996, Aspen replaced Aspen Capital Corp. as Managing Member. Id., Article I at p. 13. The Company is a limited liability company organized under the laws of Michigan, with a principal place of business in Michigan. Id. § 2.2(a). The resident agent for the Company designated by the Operating Agreement is Kostosky in Michigan. Id. § 2.2(b). All documents relating to the Company and the Project are to be maintained in Michigan. Id. §§ 2.2(a), 12.1. Similarly, inspection of Project documents is to take place at the Project office in Michigan. Id. § 12.1.

Day-to-day operations of the Project – including rental of units, maintenance of the property, and all accounting for the Project – are provided by a Management Agent. Operating Agreement, § 11.1. The initial Management Agent for the Project was Keystone Property Management ("Keystone"), a Michigan company with a principal place of business in Michigan. McCloud Aff. ¶ 6. In or about 2000, Maplegrove Property Management ("Maplegrove") began to serve as the Management Agent. Id. Maplegrove also is a Michigan entity with a principal place of business in Michigan. Id. Keystone returned as Management Agent in January 2004.

3

Id. On information and belief, documents maintained by Keystone and Maplegrove relating to the Project are located in Michigan. Id.

**Boston Capital Solicited Defendants to Become an Investor in the Project**

In or about September 1996, Chesterfield Glen received a commitment for tax credits for the Project from the Michigan State Housing Development Authority. Id. ¶ 7. In or about the summer or fall of 1996, Kostosky was approached by Boston Capital, who was interested in becoming a passive investor in the Project in order to take advantage of tax credits associated with the Project. Id. Bob Moss was the individual at Boston Capital who solicited Kostosky. Id. Kostosky in turn introduced Moss to Defendant McCloud. Id. None of the Defendants had any previous relationship with Boston Capital. Id.; Longstreth Aff. ¶ 4. Boston Capital was seeking tax credit deals for its mutual fund products and Moss's role was to identify and secure such deals. McCloud Aff. ¶ 7.

Sometime during the fall of 1996, Moss, on behalf of Boston Capital, requested that McCloud and Kostosky travel to Boston Capital's office in Massachusetts in connection with its possible investment in the Project. Id. ¶ 8. Boston Capital paid for McCloud's airfare, hotel and other expenses. Id. The meeting in Boston was a "dog and pony" show where Boston Capital attempted to entertain and impress McCloud and Kostosky in hopes of inducing them to accept Boston Capital as an investor. Id. No lawyers attended the meeting on behalf of Defendants and there was no negotiation of substantive deal terms during the meeting. Id.

This trip was the only time that McCloud traveled to Massachusetts in connection with the Project. Id. ¶ 9. Longstreth never traveled to Massachusetts in connection with the Project. Longstreth Aff. ¶ 4. Neither McCloud, Longstreth, nor Aspen solicited Boston Capital to be an investor in the Project. McCloud Aff. ¶ 9; Longstreth Aff. ¶ 4. To the contrary, it was Boston

4

Capital who pursued them. Id. McCloud never expected that by attending one preliminary meeting in Boston he would be submitting himself, his co-guarantor, and their company Aspen to jurisdiction and venue in Massachusetts for all claims relating to the Michigan-based Project. McCloud Aff. ¶ 9.

**The Transaction Closed in Michigan, All Parties Signed the Operating Agreement and Guaranty in Michigan, and the Operating Agreement and Guaranty Provide for Application of Michigan Law**

Aspen and Oakwood together agreed to permit Boston Capital to become a passive investor in the Project. Boston Capital invested approximately $5 million in the Project in return for tax credits generated by the Chesterfield Glen transaction. Id. ¶ 10. As of October 28, 1996, Boston Capital, Aspen, and Oakwood entered into the Chesterfield Glen, L.L.C. First Amended and Restated Operating Agreement for the purpose of admitting Plaintiff Boston Capital Corporation Tax Credit Fund VI as the Investment Member ("Investment Member") and Plaintiff BCCC, Inc. as the Special Member ("Special Member") of Chesterfield Glen. Exhibit A, Preliminary Statement, p. 1. The Operating Agreement specifies that it "shall be construed and enforced in accordance with the laws of the State." Id. § 13.6. "State" means the State of Michigan. Id., Article I, p. 18. Schedule A of the Operating Agreement sets out the capital contribution of each member of the Company and each member's percentage of operating profits and losses after tax credits. Schedule A details that the Investment Member is entitled to 99% of such profits and losses associated with the Project. Id., Schedule A.

Also as of October 28, 1996, Longstreth, McCloud, Moulton and Kostosky executed a Guaranty Agreement (the "Guaranty") in favor of the Investment Member. See Exhibit B. The Guaranty specifies that it "shall be governed by and construed in accordance with the internal law of the State of Michigan. All obligations of the Guarantors hereunder are payable and

5

performable at the place or places where the Guaranteed Obligations are payable and performable", that is, in Michigan.  Id. ¶ 10.

The deal closed in Detroit, Michigan at the office of counsel to the construction mortgage lender Midland Mortgage.  McCloud Aff. ¶ 12; Longstreth Aff. ¶ 6.  In attendance at the closing in Michigan were, among others, McCloud and Longstreth for Aspen; Kostosky and Moulton for Oakwood; Attorney Steven G. Gentry ("Gentry") as counsel for certain purposes for, among others, Chesterfield Glen, Aspen, Longstreth and McCloud; and on information and belief, a representative for Boston Capital.  Id.  All documents, including the Operating Agreement and Guaranty at issue in this lawsuit, were physically executed in Michigan by all parties.  McCloud Aff. ¶ 12.  A copy of the List of Documents for the closing is attached hereto as Exhibit C.

**Boston Capital Executed a Guaranty in which It**
**Consented to Jurisdiction and Venue in Michigan**

In connection with the Construction Loan for the Project, as of October 28, 1996, Plaintiff Boston Capital Corporate Tax Credit Fund VI executed a Guaranty (the "Boston Capital Guaranty") in favor of lender Midland Mortgage.  A copy of the Boston Capital Guaranty is attached as Exhibit D.  It was included in the closing documents for the transaction as part of Item 16, Construction Loan Documents.  See Exhibit C, p. 2.  The Boston Capital Guaranty guarantees that the Investment Member will pay the Second Capital Contribution as set forth in the Operating Agreement.  Exhibit D, p. 1.  With respect to the choice of law, jurisdiction, and venue, the Boston Capital Guaranty provides:

> This Agreement and the rights and liabilities of the parties hereunder shall
> be governed by the laws of the State of Michigan.  Obligor [Boston
> Capital Corporate Tax Credit Fund VI] agrees that any legal action or
> proceeding against them, with respect to their obligations under this
> Agreement may be brought in any court of the State of Michigan, as
> Lender [Midland Mortgage], in its sole discretion, may elect.  By the
> execution and delivery of this Agreement, Obligor submits to and accepts,
> for itself and in respect of its respective property, generally and

6

<u>unconditionally, the jurisdiction of Michigan courts with regard to any</u>
<u>such action or proceeding.  Obligor waives any claim that the State of</u>
<u>Michigan is not a convenient forum or the proper venue for any such suit,</u>
<u>action or proceeding.</u>

<u>Id.</u>, p. 2 (emphasis added).

## The Alleged Breach of Fiduciary Duty by Defendants Occurred in Michigan

In their Complaint, Plaintiffs allege that Aspen improperly diverted $180,000 of Chesterfield Glen's funds in violation of ¶¶ 6.5(a), 6.5(l), and 10.2(a) of the Operating Agreement and that such diversion breached Aspen's fiduciary duties.  Complaint ¶¶ 15-16. Chesterfield Glen, a Michigan entity, is named as a Plaintiff and is alleged to have suffered harm because of Defendants' actions.  <u>Id.</u> ¶¶ 6, 28, 37.  The Complaint specifically claims that the funds allegedly diverted by Defendants belong to Chesterfield Glen.  <u>Id.</u> ¶ 42.  Oakwood, also a Michigan entity, is named as an "involved" entity, but not as a party.  <u>Id.</u> ¶ 11.  The Complaint also asserts claims against McCloud and Longstreth individually under the Guaranty.  <u>Id.</u> ¶¶ 30-33.  Although Kostosky and Moulton also signed the Guaranty, the Complaint does not assert any claims against them for breach of the Guaranty.

The payments objected to by Plaintiffs were made by Plaintiff Chesterfield Glen in Michigan through the Management Agents for the Project, who were also based in Michigan. McCloud Aff. ¶ 17.  The payments made by Chesterfield Glen to Aspen were fully disclosed to Plaintiffs through the audited financial statements of the Company provided to Plaintiffs on a yearly basis, as required by the Operating Agreement.  Exhibit A, § 12.3; McCloud Aff. ¶ 17. On information and belief, Oakwood, the co-Managing Member with Aspen, along with its principals Kostosky and Moulton, knew of and did not object to the payments made to Aspen by Chesterfield Glen in Michigan.  <u>Id.</u> ¶ 17.

## ARGUMENT

I.  **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER THE NON-RESIDENT DEFENDANTS**

A.  **Legal Standard**

To defeat Defendants' motion to dismiss, Plaintiffs bear the burden of presenting specific, articulable facts to make a prima facie showing of personal jurisdiction. Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978); Noonan v. Colour Library Books, Ltd., 947 F.Supp. 564, 568 (D. Mass. 1996); Massachusetts School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 34 (1st Cir. 1998). Mere allegations in plaintiffs' complaint are insufficient to establish personal jurisdiction. Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979).

In the case at bar, jurisdiction is based upon diversity of citizenship, thus the Court should apply the law of the forum state, Massachusetts, to determine whether personal jurisdiction exists here over Defendants. Gray v. O'Brien, 777 F.2d 864, 866 (1st Cir. 1985).

The two-fold test for determining whether a court has personal jurisdiction over a non-resident defendant is well known. First, the court must determine whether the forum state's long arm statute subjects the defendant to jurisdiction. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994) *quoting* Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Second, the exercise of jurisdiction by the court must comport with the due process requirements of the Constitution. Id.; Aub v. Technicolor Entertainment Services, 224 F.Supp.2d 371, 373, n. 1 (D. Mass. 2002).

B.  **Plaintiffs Cannot Satisfy The Requirements To Establish Personal Jurisdiction Over Defendants Under The Massachusetts Long Arm Statute**

The Massachusetts Long Arm Statute provides in pertinent part:

8

A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:

    a.  transacting any business in this Commonwealth;

        ...

    c.  causing tortious injury by an act or omission in this Commonwealth;

    d.  causing tortious injury in this Commonwealth by an act of omission outside this Commonwealth if he regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

        ...

G.L. c. 223A, § 3.

None of these three statutory grounds for personal jurisdiction exists in this case.

### 1.    Defendants did not transact business in Massachusetts

In order for jurisdiction to exist under § 3(a) of the Long Arm Statute, two requirements must be met: (1) the defendants must have transacted business **in** Massachusetts, and (2) the plaintiffs' claims must have arisen from the defendants' transaction of such business. Bennett v. Jack Dennis Whitewater Trips, 925 F. Supp. 889, 894 (D. Mass. 1996). Plaintiffs have the burden of establishing that the non-resident Defendants injured Plaintiffs through conduct in Massachusetts. Plaintiffs cannot satisfy this burden.

Defendants transacted no business in the Commonwealth. The breach of fiduciary duty alleged in the Complaint arises out of payments made by Plaintiff Chesterfield Glen in Michigan to Aspen in Ohio. Plaintiffs have not shown how this conduct occurred in Massachusetts.

Almost nothing with respect to this lawsuit occurred in Massachusetts. The Project is in Michigan, the relevant documents call for application of Michigan law, the deal closed in Michigan, and the Operating Agreement and Guaranty were signed by all parties in Michigan. The Plaintiff Chesterfield Glen, who was allegedly harmed by the improper payments that Aspen as a Managing Member allegedly caused it to make, is a Michigan company based in Michigan.

Indeed, Plaintiff Boston Capital Corporate Tax Credit Fund VI unambiguously submitted to and accepted jurisdiction and venue in Michigan by executing the Boston Capital Guaranty in favor of Midland Mortgage as part of the underlying Construction Loan. Plaintiffs can hardly argue that jurisdiction and venue in Michigan are improper, inconvenient or not anticipated in the context of disputes arising under the Operating Agreement when the Boston Capital Guaranty makes specific reference to the Operating Agreement.

Where performance of a contract is anticipated to occur and actually occurs outside of Massachusetts, the First Circuit has held that no business was transacted within Massachusetts sufficient to exercise jurisdiction over non-resident defendants. See Lyle Richards International, Inc. v. Ashworth, Inc., 132 F.3d 111, 112-114 (1st Cir. 1997) *and cases cited therein* (no personal jurisdiction under § 3(a) where most performance required of nonresident under contract was to be rendered outside of Massachusetts, and isolated contacts with Massachusetts were incidental in nature). Here, the parties anticipated that the Operating Agreement and Guaranty would be performed where the Company and the Project were located, i.e., in Michigan. McCloud Aff. ¶ 15; Longstreth Aff. ¶ 7. Indeed, the Operating Agreement specifies that Chesterfield Glen shall not ... engage in any business or activity outside the state [of Michigan]." Exhibit A, § 2.2(d). Aspen itself is authorized to do business in Michigan, but not in Massachusetts. McCloud Aff. ¶ 2; Exhibit E. The Guaranty similarly specifies that it is to be performed in Michigan. Exhibit B, ¶ 10. The disputed payments by Chesterfield Glen to Aspen were actually made in Michigan. McCloud Aff. ¶ 17. Because contractual performance was to take place in Michigan and there were no other substantial contacts by Defendants with Massachusetts, there is no basis to find that Defendants transacted business within Massachusetts. Lyle, 132 F.3d at 112-114; Aub, 224 F.Supp.2d at 373 (no personal jurisdiction under § 3(a) where parties did not anticipate that

consulting work would be performed in Massachusetts, and contacts by nonresident by mail and telephone with Massachusetts were insufficient to find transaction of business in Massachusetts); Information Mapping Inc. v. Access Healthcare Systems Inc., 2000 WL 1273405, at *2 (Mass. Super. May 10, 2000) (granting motion to dismiss where work was performed in Tennessee because "[a]ncillary activities which are only incidental to the performance of a project located within another state do not fall within the meaning of the Massachusetts long-arm statute [sic]").

The absence of physical presence by defendants in the forum state is strong evidence that no business was transacted in the state. Aub, 224 F.Supp.2d at 374. Here, Defendants traveled to Michigan, not Massachusetts, for the closing of the transaction. Defendants Aspen and Longstreth were never physically present in Massachusetts as part of the transaction that is the subject of this lawsuit. While McCloud visited Massachusetts once, the trip was only in response to Boston Capital's solicitation of participation in the transaction and at Boston Capital's expense. Such a trip without more does not come close to establishing sufficient contacts to qualify as "transacting business" under the Massachusetts Long-Arm Statute. Id.; Lyle, 132 F.3d at 112-114 (attendance at three trade shows in Massachusetts insufficient); Nichols Associates, Inc. v. Starr, 4 Mass. App. Ct. 91, 96-97 1976) (occasional trips to Massachusetts to take delivery of surveying plans insufficient); Information Mapping, 2000 WL 1273405, at *2 (initial meetings between parties in Massachusetts to discuss potential agreement insufficient where work under contract was intended to be performed outside state).

Finally, where a plaintiff solicits nonresident defendants outside of Massachusetts, courts are loathe to conclude that the defendants voluntarily transacted business within the Commonwealth. Lyle, 132 F.3d at 113. Here, Boston Capital solicited the transaction through contacts with Kostosky in Michigan. McCloud Aff. ¶ 7. Defendants categorically deny

11

soliciting Boston Capital. Id. ¶ 9; Longstreth Aff. ¶ 4. The fact that Boston Capital paid all of McCloud's expenses for his one trip to Boston confirms that Boston Capital was soliciting him. McCloud Aff. ¶ 8. In these circumstances, there is no jurisdiction available under § 3(a). Lyle, 132 F.3d at 113; Aub, 224 F.Supp.2d at 374.

### 2. Defendants did not cause tortious injury by an act or omission in Massachusetts

There are no facts establishing that Defendants caused "tortious injury by an act or omission in this Commonwealth" under G.L. c. 223A, § 3(c). Section 3(c) requires Plaintiffs to establish that their alleged injury arose from wrongful acts **in** Massachusetts. Cook v. McLaughlin, 917 F. Supp. 79, 83 (D. Mass. 1996) (jurisdiction under § 3(c) not available where plaintiffs failed to allege that any of the tortious acts occurred in Massachusetts). Plaintiffs fail in this case to allege that any specific acts by Defendants within Massachusetts resulting in the alleged tortious injury. As stated above, the acts complained of in the Complaint transpired in Michigan, not Massachusetts. Accordingly, jurisdiction is not available in Massachusetts under G.L. c. 223A, § 3(c). Mass. School of Law at Andover v. American Bar Assoc., 959 F. Supp. 36, 39-40 (D. Mass. 1997) (where plaintiff claimed that defendant wrongfully withheld accreditation, allegation that accreditation board met twice in Massachusetts did not confer jurisdiction under § 3(c) because plaintiffs failed to establish that the denial occurred at either meeting).

### 3. Defendants did not cause tortious injury in the Commonwealth and did not regularly solicit business, engage in persistent conduct or derive substantial revenue from goods sold or services rendered in the Commonwealth

Plaintiffs do not allege and cannot show that Defendants (1) regularly did business or solicited business in Massachusetts, (2) engaged in persistent conduct in Massachusetts, or (3)

derived substantial revenue from goods or services used in Massachusetts. Bearse v. Main Street Investments, 170 F.Supp.2d 107, 113 (D. Mass 2001) (where bond investor sued seller of bonds for fraud, Chapter 223A, §3(d) was not satisfied where no allegations regarding doing business in Massachusetts or revenue from goods or services used in Massachusetts). Defendants have not engaged in any such conduct in Massachusetts. McCloud Aff. ¶ 3; Longstreth Aff. ¶ 3.[1]

In conclusion, whether examined under G.L. c. 223A §3(a), (c), or (d), there do not exist sufficient contacts with Massachusetts to permit this Court to exercise personal jurisdiction over Defendants in this case.

**C.    Plaintiffs Cannot Establish That The Exercise Of Personal Jurisdiction Is Consistent With Constitutional Due Process**

Even if the criteria of the Massachusetts Long Arm Statute are met, which they are not in this instance, Plaintiffs also bear the burden of showing that exercise of personal jurisdiction in Massachusetts is consistent with the more rigorous requirements of due process under the Fourteenth Amendment. Tatro, 416 Mass. at 767. Personal jurisdiction will be appropriate where the non-resident defendant has sufficient minimum contacts with the forum such that a lawsuit there would not offend "traditional notions of fair play and substantial justice." Good Hope Indus., 378 Mass. at 7, *quoting* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Plaintiffs must also show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its law." Good Hope Indus., 378 Mass. at 7, *quoting* Hanson v. Denckla, 357 U.S. 235, 253 (1958); Bond Leather Co., Inc. v. Q. T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933-934 (1st

---

[1]  Section 3(d) is also not satisfied because Plaintiffs do not allege and cannot show that they suffered any tortious injury *within* Massachusetts from acts committed outside the state. Any injury suffered as the result of any alleged improper payments by Plaintiff Chesterfield Glen occurred in the jurisdiction where it is incorporated and located, i.e. Michigan.

Cir. 1985). "Random, isolated, or fortuitous" contacts by defendant with the forum will fail the

purposeful availment test. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995), *quoting*

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).[2]

      Specific jurisdiction may be asserted where the cause of action arises directly out of, or

relates to the defendant's contacts with the forum. United States v. Swiss Am. Bank, Ltd., 274 F

3d 610, 620-621 (1st Cir. 2001). The First Circuit employs a three-part test to determine whether

contacts satisfy specific jurisdiction:

> First, an inquiring court must ask whether the claim that undergirds the
> litigation directly relates to or arises out of the defendant's contacts with
> the forum. Second, the court must ask whether those contacts constitute
> purposeful availment of the benefits and protections afforded by the
> forum's laws. Third, if the proponent's case clears the first two hurdles,
> the court then must analyze the overall reasonableness of an exercise of
> jurisdiction in light of a variety of pertinent factors that touch upon the
> fundamental fairness of an exercise of jurisdiction.

United States v. Swiss Am. Bank, Ltd., 274 F.3d at 620-621, *citing* Phillips Exeter Acad. v.

Howard Phillips Fund, Inc., 196 F. 3d 284, 288 (1st Cir. 1999).

      With respect to tort claims such as Plaintiffs' claims of breach of fiduciary duty, the first

prong of the test requires that the in-forum contacts be both the cause in fact and the proximate

cause of the plaintiff's injuries. Macri v. Macri, 2002 WL 826823, at *9 (D. N.H. May 1, 2002).

This is referred to as the relatedness requirement. Phillips Exeter, 196 F.3d at 289. For

jurisdictional purposes, a breach of fiduciary duty occurs where the fiduciary acts disloyally or

negligently. Id. at 291; Sawtelle, 70 F.3d at 1390-1391 (relatedness factor not met where the

defendant attorneys' alleged malpractice occurred outside of forum and contacts with forum

---

[2] Personal jurisdiction may be general or specific. United States v. Swiss Am. Bank Ltd., 274 F. 3d 610, 618-621
(1st Cir. 2001). General jurisdiction requires that the defendant have "continuous and systematic activity, unrelated
to the suit, in the forum state." United Elec. Radio and Mach. Workers of Amer. v. 163 Pleasant Street Corp., 960
F.2d 1080, 1088 (1st Cir. 1992). No facts are alleged in the Complaint to support general jurisdiction in this case.

regarding improper legal advice were ancillary to the allegedly negligent non-forum activities). Mere in-forum effects of an extra-forum breach are not sufficient. Id.; International Paper Box Machine Co. v. Paperboard Industries, Inc., 2000 WL 1480462, at *5 (D. N.H. Feb. 8, 2000) (where formation of contract and breach occur outside of the forum, mere communication directed at the forum will not confer jurisdiction); American Freedom Train Foundation v. Spurney, 747 F.2d 1069, 1074-1075 (1st Cir. 1984).

In the case at bar, the alleged breach of fiduciary duty by Defendants occurred in Michigan, where the Operating Agreement and Guaranty were executed and performed, not in Massachusetts. As such, Defendants' contacts with the forum do not satisfy the first prong of the three-part test for specific jurisdiction.

Second, the court will examine whether the defendant purposefully availed himself of the privilege of conducting business in the forum, focusing on whether the defendant voluntarily associated himself with the forum and whether a lawsuit in the forum would be foreseeable. Sawtelle, 70 F.3d. at 1389. Mere passive investment by a plaintiff is insufficient to confer specific jurisdiction. See, e.g., Bearse, 170 F.Supp.2d at 113 (sale of bonds in mortgage-backed bonds deal does not confer jurisdiction in investor's state even where communications about the property are sent to the forum). An action by a limited partner for breach of contract and breach of fiduciary duty is properly brought where the general partner resides, absent more substantial contacts with the limited partner's state. Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc., 785 F.2d 1330, 1334 (5th Cir. 1986) (motion to dismiss allowed due to lack of personal jurisdiction in Texas when Texas limited partner sued Arizona general partner).

Defendants in this case did nothing to purposefully avail themselves of the privileges of doing business in Massachusetts. Defendants did not solicit investment in the Project by Boston

Capital; Defendants have never conducted business in Massachusetts; the documents at issue call for application of Michigan law; and the Project is in Michigan. To the contrary, Defendants availed themselves of the privileges of doing business in Michigan by executing documents in Michigan that call for application of Michigan law and contractual performance in Michigan, by participating in a low-income housing tax credit deal regulated by Michigan State Housing Development Authority for a Project located in Michigan.

Boston Capital's role in this transaction is merely that of a passive investor. Such role is akin to that of a limited partner, while Aspen and Oakwood, as Managing Members of Chesterfield Glen, are analogous to general partners. This lawsuit properly belongs in Michigan, where the Project is located, Chesterfield Glen is incorporated and does business, one Managing Member/general partner (Oakwood) is located, the other Managing Member/general partner (Aspen) is qualified to do business, and the Operating Agreement/limited partnership agreement was executed. Colwell, 785 F.2d at 1334-35.

Third, the court will examine the reasonableness of jurisdiction by employing the "gestalt factors." The court will weigh (1) the defendant's burden of appearing; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interest of all sovereigns in promoting social policies. Sawtelle, 70 F.3d at 1394. In this case, all of these factors weigh in favor of Defendants' motion to dismiss, as (1) Defendants reside in Ohio and do business in Ohio and Michigan and will be substantially inconvenienced by litigating this case in Massachusetts; (2) Massachusetts has little interest in adjudicating this dispute that involves acts occurring outside its borders; (3) Plaintiffs will not be unduly inconvenienced by litigating in Michigan, as plaintiff Chesterfield Glen is located in

16

Michigan, and plaintiff Boston Capital previously consented to jurisdiction and venue in

Michigan under the Boston Capital Guaranty; (4) the most effective resolution of the controversy

can be achieved in Michigan, where co-Managing Member Oakwood and its principals, who are

co-guarantors under the Guaranty, are based, where the Project and its documents are located,

and where the court can apply familiar Michigan law; and (5) declining to exercise jurisdiction

over non-resident defendants in this case advances valid social policies because it is consistent

with long-established restrictions on personal jurisdiction and Plaintiffs remain able to pursue

their claims in a forum they have acknowledged is convenient for them. Id. at 1395-96. See

Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 209-212 (1st Cir. 1994); Int'l Paper Box

Machine Co., 2000 WL 1480462, at *6.

For these reasons, the Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(2)

for lack of personal jurisdiction.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION FROM MASSACHUSETTS TO THE EASTERN DISTRICT OF MICHIGAN PURSUANT TO 28 U.S.C. § 1404(a)

If the Court declines to dismiss this action, it nevertheless should transfer this action to

the Eastern District of Michigan. Under 28 U.S.C. § 1404(a), a district court may transfer any

civil action upon the defendant's showing that it would be "[f]or the convenience of parties and

witnesses" and "in the interest of justice" to another district in which the action could have been

brought. The relevant statute governing venue for diversity actions is 28 U.S.C. § 1391(a), which

provides, in part, that venue is appropriate in the district where "a substantial part of the events or

omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Bringing this action in the

Eastern District of Michigan would have been appropriate under 28 U.S.C. § 1391(a)(2), as the

17

alleged breach of fiduciary duty occurred there. As such, Michigan is an appropriate forum for transfer.

The decision to transfer is within the discretion of this Court, and is based upon weighing a variety of public and private factors, including the convenience of the witnesses, the ease of access to sources of proof, the need for service of process, the benefit of having a case tried in a forum most familiar with the relevant law, and the interest in having local actions tried in their home state. Atari v. United Parcel Service, Inc., 211 F.Supp.2d 360, 364 (D. Mass. 2002). Although the plaintiff's choice of forum sometimes deserves deference, when "the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight." Brant Point Corp. v. Poetzsch, 671 F.Supp. 2, 5 (D. Mass. 1987).

The instant lawsuit is concerned entirely with the alleged breach of fiduciary duty by Defendants in Michigan, and has no material connection with Massachusetts. The only connection Massachusetts has to the case is that it happens to be where Plaintiff Boston Capital resides. The remaining Plaintiff, Chesterfield Glen, is a limited liability company located in Michigan. The Court should not give deference to Plaintiffs' decision to file in Massachusetts.

Several factors militate for transfer to Michigan in this case. The first is the convenience of the witnesses, "[p]robably the most important factor, and the factor most frequently mentioned." Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991), *quoting* Brant Point, 671 F.Supp. at 5. When weighing this factor, the court should take into account not only the number of witnesses, but also the nature and quality of their testimony. Id. at 18. See also Atari, 211 F.Supp.2d at 363. Here, the majority of the crucial witnesses reside in Michigan, and will be substantially inconvenienced by a trial in Massachusetts. Importantly, these witnesses include Kostosky; Moulton; employees of Keystone, Maplegrove, Oakwood; and Keepers of

18

Records of these companies as well as Chesterfield Glen itself. Their testimony will bear on the nature of the payments made by Chesterfield Glen to Aspen, the lack of objections to such payments, the interpretation of the Operating Agreement, the cash flow of the Project, and the performance of duties by Defendants. McCloud Aff. ¶ 18. These witnesses are third parties and will not be subject to subpoena in Massachusetts for trial. Transfer to Michigan would obviate this significant problem. Princess House, 136 F.R.D. at 19-20. Transfer to Michigan would also lessen, although not eliminate, the inconvenience of trial for those witnesses located in Ohio, including McCloud, Longstreth, Aspen's Keeper of Records, as well as Chesterfield Glen's auditors and attorney Steven Gentry. McCloud Aff. ¶ 18; Longstreth Aff. ¶ 9.

In addition, the location of relevant documents weighs in favor of transfer to Michigan. In past cases involving breach of contract or fiduciary duty, this Court has considered the location of such documents as an additional factor in favor of transfer. See F.A.I. Electronics Corp. v. Chambers, 944 F.Supp. 77, 81 (D. Mass. 1996); Liberty Mutual Ins. Co. v. Gardere & Wynne, L.L.P., 1994 WL 707133, at *10 (D. Mass. Dec. 6, 1994). In the instant case, all relevant documents are located in Michigan. McCloud Aff. ¶¶ 5,6. Indeed, under the Operating Agreement, Boston Capital's inspection of any documents relating to Chesterfield Glen is to take place at the Project's office in Michigan. Exhibit A, § 12.1.

Courts in other circuits have analyzed the same factors in the context of breach of fiduciary duty involving limited and general partners. In these cases, the most appropriate venue for a limited partner to sue a general partner has been determined to be the district where the partnership or the general partner resides. See Sowell v. Consolidated Equities Corp., 1989 WL 387, at *2 (E.D. Pa. Jan. 4, 1989) (transfer from district of limited partner to district where partnership resides appropriate given convenience and availability of witnesses, familiarity with

19

state law, and fact that partnership was formed there); <u>Cantor v. Caswell</u>, 1994 WL 649324, at *2-3 (E.D. Pa. Nov. 15, 1994) (transfer from district of limited partner to district where partnership resides and breach occurred based upon convenience of witnesses, location of documents, and familiarity with state law); <u>Lewis v. C.R.I., Inc.</u>, 2003 WL 1900859, at *3 (S.D.N.Y. April 17, 2003) (transfer to district where partnership resides based primarily upon the fact that claims arose there).

As discussed, Chesterfield Glen is a Michigan company, with two Managing Members – Aspen, located in Ohio, and Oakwood, located in Michigan. Aspen and Oakwood are akin to general partners while Boston Capital, located in Massachusetts, is a passive investor akin to a limited partner. The alleged breach of fiduciary duty occurred in Michigan and directly relates to Chesterfield Glen and the Project, also located in Michigan. Accordingly, Michigan courts have a far greater interest in presiding over the litigation of this case. This Court should recognize Michigan's superior stake in resolution of this lawsuit and order that the action be transferred.

Furthermore, Michigan law will govern this dispute. <u>See</u> Exhibit A, § 13.6; Exhibit B, ¶ 10. This Court has previously recognized the desirability of having the court most familiar with the relevant state law adjudicate the dispute. <u>See</u> <u>Brant Point</u>, 671 F.Supp. at 5, <u>Gardere & Wynne</u>, 1994 WL 707133, at *10. Finally, by executing the Boston Capital Guaranty, Plaintiff Boston Capital previously consented to jurisdiction and venue in Michigan. Exhibit D at 2.

Application of all of these factors strongly counsels in favor of transfer of this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For these reasons, Defendants respectfully request that this Court GRANT its Motion to Dismiss or in the alternative transfer the action to the Eastern District of Michigan.

ASPEN CHESTERFIELD CORPORATION,
CRAIG A. LONGSTRETH, AND
DOUGLAS R. McCLOUD

By their attorneys,

David E. Lurie, BBO #542030
Sara A. Laroche, BBO #652479
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Telephone: (617) 367-1970

Dated:  June 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2004, a true copy of the above document was served by hand on Sigmund J. Roos, Field & Roos, LLP, 60 State Street, 38th Floor, Boston, MA 02109.

David E. Lurie

21