UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BCCTC ASSOCIATES VI, INC.,<br>as general partner of<br>BCCTC ASSOCIATES VI<br>LIMITED PARTNERSHIP<br>as general partner of<br>BOSTON CAPITAL CORPORATE<br>TAX CREDIT FUND VI, A LIMITED<br>PARTNERSHIP,<br>BOSTON CAPITAL CORPORATE<br>TAX CREDIT FUND VI, A LIMITED<br>PARTNERSHIP,<br>BCCC, INC., individually<br>and on behalf of<br>CHESTERFIELD GLEN, L.L.C., and<br>CHESTERFIELD GLEN, L.L.C.,<br>Plaintiffs,<br><br>v.<br><br>ASPEN CHESTERFIELD CORP.,<br>CRAIG A. LONGSTRETH, and<br>DOUGLAS R. McCLOUD,<br>Defendants. | Civil Action No. 04-11030-RCL |

### AFFIDAVIT OF DOUGLAS R. McCLOUD

I, Douglas R. McCloud, on oath depose and say as follows:

1. My name is Douglas R. McCloud. I submit this Affidavit in support of Defendants' Motion to Dismiss or Transfer the Proceedings. I am fully familiar with and competent to testify to the facts set forth below.

2. I reside at 1666 Birdsong Court, Blacklick, Ohio, 43004. My business address is 1010 Jackson Hole Drive, Suite 200, Blacklick, Ohio, 43004. I am a principal and President of Aspen Chesterfield Corp. ("Aspen"). Aspen is an Ohio corporation. Aspen has a principal

place of business at 1010 Jackson Hole Drive, Suite 200, Blacklick, Ohio, 43004. Aspen is authorized to do business in the state of Michigan.

3.  Neither I nor Aspen has ever transacted business in the Commonwealth of Massachusetts. Neither I nor Aspen has ever regularly done business or solicited business in Massachusetts, engaged in any persistent conduct in Massachusetts, or derived substantial revenue from goods or services used in Massachusetts. Neither I nor Aspen has ever sold any goods in Massachusetts or performed any services in Massachusetts.

4.  Beginning in or about 1995, Oakwood Development, L.C. ("Oakwood") began pursuing a low- and moderate-income housing development in Chesterfield, Michigan just outside of Detroit (the "Project"). Oakwood is a limited liability company organized under the laws of Michigan and has a principal place of business at 4121 Okemos Road, Suite 10, Okemos, Michigan, 48864. Thomas J. Kostosky ("Kostosky") and Craig A. Moulton ("Moulton") are principals of Oakwood. Kostosky and Moulton have a business address at 4121 Okemos Road, Suite 10, Okemos, Michigan, 48864. It is my understanding that both Kostosky and Moulton reside in Michigan. In 1995, Oakwood formed Chesterfield Glen, L.L.C. ("Chesterfield Glen" or the "Company") to develop the Project. The original operating agreement for the Company was executed on May 1, 1995. See First Amended and Restated Operating Agreement, Preliminary Statement, p.1 ("Operating Agreement"), attached hereto as Exhibit A.

5.  Later in 1995, Oakwood began working together with Aspen Capital Corp., an affiliate of Aspen, on the Project. In or about February 1996, the Operating Agreement was amended and Aspen Capital Corp. was admitted to the Company. The sole purpose of the Company is to develop and maintain the Project in Chesterfield, Michigan. Id. § 2.3. The Operating Agreement specifies that "the Company shall not ... engage in any business or activity

2

outside the state [of Michigan]." Id. § 2.2(d). Aspen Capital Corp. and Oakwood were the two Managing Members of the Company; in November 1996, Aspen replaced Aspen Capital Corp. as Managing Member. Id., Article I at p. 13. The Company is a limited liability company organized under the laws of Michigan, with a principal place of business in Michigan. Id. § 2.2(a). The resident agent for the Company designated by the Operating Agreement is Kostosky in Michigan. Id. § 2.2(b). All documents relating to the Company and the Project are to be maintained in Michigan. Id. §§ 2.2(a), 12.1. Similarly, inspection of Project documents is to take place at the Project office in Michigan. Id. § 12.1.

6. Day-to-day operations of the Project – including rental of units, maintenance of the property, and all accounting for the Project – are provided by a Management Agent. Operating Agreement, § 11.1. The initial Management Agent for the Project was Keystone Property Management ("Keystone") d/b/a W.B. Smith Company, a Michigan company with a principal place of business at 102 S. Main Street, Mt. Pleasant, Michigan, 48858. In or about 2000, Maplegrove Property Management ("Maplegrove") became the Management Agent. Maplegrove also is a Michigan entity with a principal place of business in Michigan. Keystone returned as Management Agent in January 2004. It is my understanding that documents relating to the Project maintained by Keystone and Maplegrove are located in Michigan.

7. In or about September 1996, Chesterfield Glen received a commitment for tax credits for the Project by the Michigan State Housing Development Authority. In or about the summer or fall of 1996, Kostosky was approached by Boston Capital, who was interested in becoming a passive investor in the Chesterfield Project in order to take advantage of tax credits associated with the Project. Bob Moss was the individual at Boston Capital who solicited Kostosky. Kostosky in turn introduced Moss to me. Neither I nor Aspen had any previous

relationship with Boston Capital. Boston Capital was seeking tax credit deals for its mutual fund products and Moss's role was to identify and secure such deals.

8. Sometime during the fall of 1996, Moss, on behalf of Boston Capital, requested that I and Kostosky travel to Boston Capital's office in Massachusetts in connection with its possible investment in the Project. Boston Capital paid for my airfare, hotel and other expenses. The meeting in Boston was a "dog and pony" show where Boston Capital attempted to entertain and impress Kostosky and me in hopes of inducing us to accept Boston Capital as an investor. No lawyers attended the meeting on behalf of me or Aspen and there was no negotiation of substantive deal terms during the meeting.

9. This trip was the only time that I traveled to Massachusetts in connection with the Project. Neither I nor Aspen solicited Boston Capital to be an investor in the Project. To the contrary, it was Boston Capital who pursued us. I never expected that by attending the one preliminary meeting in Boston I would be submitting myself, Longstreth, or Aspen to jurisdiction and venue in Massachusetts for all claims relating to the Michigan-based Project.

10. Aspen and Oakwood together agreed to permit Boston Capital to become a passive investor in the Project. Boston Capital invested approximately $5 million in the Project in return for tax credits generated by the Chesterfield Glen transaction. As of October 28, 1996, Boston Capital, Aspen, and Oakwood entered into the Chesterfield Glen, L.L.C. First Amended and Restated Operating Agreement for the purpose of admitting Plaintiff Boston Capital Corporation Tax Credit Fund VI as the Investment Member ("Investment Member") and Plaintiff BCCC, Inc. as the Special Member ("Special Member") of Chesterfield Glen. Exhibit A, Preliminary Statement, p. 1. The Operating Agreement specifies that it "shall be construed and enforced in accordance with the laws of the State." Id. § 13.6. "State" means the State of

Michigan. Id., Article 1, p. 18. Schedule A of the Operating Agreement sets out the capital contribution of each member of the Company and each member's percentage of operating profits and losses after tax credits. Schedule A details that the Investment Member is entitled to 99% of such profits and losses associated with the Project. Id., Schedule A.

11. Also as of October 28, 1996, I, Longstreth, Moulton and Kostosky executed a Guaranty Agreement (the "Guaranty") in favor of the Investment Member. The Guaranty, attached hereto as Exhibit B, specifies that it "shall be governed by and construed in accordance with the internal law of the State of Michigan. All obligations of the Guarantors hereunder are payable and performable at the place or places where the Guaranteed Obligations are payable and performable", that is, in Michigan. Id. ¶ 10.

12. The deal closed in Detroit, Michigan at the office of counsel to the construction mortgage lender Midland Mortgage. In attendance at the closing in Michigan were, among others, me and Longstreth for Aspen; Kostosky and Moulton for Oakwood; Attorney Steven G. Gentry ("Gentry") as counsel for certain purposes for, among others, Chesterfield Glen, Aspen, Longstreth and myself; and on information and belief, a representative for Boston Capital. All documents, including the Operating Agreement and Guaranty at issue in this lawsuit, were physically executed in Michigan by all parties. A copy of the List of Documents for the closing is attached hereto as Exhibit C.

13. In connection with the Construction Loan for the Project, as of October 28, 1996, Plaintiff Boston Capital Corporate Tax Credit Fund VI executed a Guaranty (the "Boston Capital Guaranty") in favor of lender Midland Mortgage. A copy of the Boston Capital Guaranty is attached as Exhibit D. It was included in the closing documents for the transaction as part of Item 16, Construction Loan Documents. See Exhibit C, p. 2. The Boston Capital Guaranty

guarantees that the Investment Member will pay the Second Capital Contribution as set forth in the Operating Agreement. Exhibit D, p. 1. As part of the Boston Capital Guaranty, Boston Capital consented to jurisdiction and venue in Michigan. Id., p. 2.

14. Also among the closing documents was a certified copy of Aspen's Application for Certificate of Authority to Transact Business or Conduct Affairs in Michigan. This document is attached hereto as Exhibit E and was included in the closing documents for the transaction as part of Item 38.

15. At the time of closing, it was my understanding that Aspen's obligations as Managing Member under the Operating Agreement were to be performed in Michigan, where Chesterfield Glen and the Project were located and where Aspen was authorized to do business. It was also my understanding that my personal obligations under the Guaranty were also to be performed in Michigan.

16. In 2004, Boston Capital, individually and on behalf of Chesterfield Glen, filed this lawsuit against Aspen, Longstreth and me. In their Complaint, Plaintiffs allege that Aspen improperly diverted $180,000 of Chesterfield Glen's funds in violation of the Operating Agreement and that such diversion breached Aspen's fiduciary duties. Chesterfield Glen is named as a Plaintiff and is alleged to have suffered harm because of Defendants' actions. The Complaint specifically claims that the funds allegedly diverted by Defendants belong to Chesterfield Glen. Oakwood, also a Michigan entity, is named as an "involved" entity, but not as a party. The Complaint also asserts claims against me and Longstreth individually under the Guaranty. Although Kostosky and Moulton also signed the Guaranty, the Complaint does not assert any claims against them for breach of the Guaranty.

17. The payments objected to by Plaintiffs were made by Chesterfield Glen in Michigan through the Management Agents for the Project, who were also based in Michigan. The payments made by Chesterfield Glen to Aspen were fully disclosed to Plaintiffs through the audited financial statements of the Company provided to Plaintiffs on a yearly basis, as required by the Operating Agreement. Exhibit A, § 12.3. On information and belief, Oakwood, the co-Managing Member with Aspen, along with its principals Kostosky and Moulton, knew of and did not object to the payments made to Aspen by Chesterfield Glen in Michigan.

18. It would be substantially inconvenient for me to travel from Ohio to Massachusetts in connection with any litigation of this matter. It also would be substantially inconvenient for other witnesses who are located in Michigan. These witnesses include Kostosky; Moulton; employees of Keystone, Maplegrove, Oakwood; and Keepers of Records of these companies as well as Chesterfield Glen itself. I expect that these witnesses' testimony will bear on the nature of the payments made by Chesterfield Glen to Aspen, the lack of objections to such payments, the interpretation of the Operating Agreement, the cash flow of the Project, and the performance of duties by Defendants. Transfer of this case to Michigan would obviate this significant inconvenience for the Michigan-based witnesses, and would also lessen, although not eliminate, the inconvenience for those witnesses located in Ohio, including me, Longstreth, Aspen's Keeper of Records, as well as Chesterfield Glen's auditors and attorney Steven Gentry (both of whom reside and work in Ohio).

Signed under the pains and penalties of perjury this 28th day of June 2004.

_____
Douglas R. McCloud

8